## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

EVEREST STABLES, INC.                                          PLAINTIFF

V.                                              NO. 3:15-CV-576-BJB

WILLIAM C. RAMBICURE, JR., ET AL.                         DEFENDANTS

* * * * *

### MEMORANDUM OPINION & ORDER

This legal-malpractice case arises from a horse deal gone south.  Everest Stables agreed with Crestwood Farm Bloodstock in 2008 that Crestwood would sell Everest's horses.  *See Everest Stables, Inc. v. Rambicure*, 803 F. App'x 819, 821 (6th Cir. 2020).  As required by that contract, Crestwood (a boarding farm and sales agent) set up auctions for Everest's horses.  But Everest sent an agent to an auction to drive up the selling price by placing a high bid on Everest's behalf.  No one outbid Everest's agent, so the sale failed.  *Id.*  Each side then sued the other in prior litigation that established Everest breached the implied covenant of good faith and fair dealing by effectively setting a reserve price equal to its own bid.  *See Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 751 F.3d 434, 445–46 (6th Cir. 2014) (affirming summary judgment on Crestwood's behalf).

Everest then filed this lawsuit against William Rambicure and the Rambicure Law Group for legal malpractice.  It says Rambicure gave Everest erroneous and ultimately very costly legal advice that nothing in the Crestwood contract prevented Everest's agent from bidding at the auction.  Complaint (DN 1) ¶¶ 1, 29.  To prevail on this claim, Everest must prove that (1) an "employment relationship" existed between Everest and Rambicure, (2) "the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances;" and (3) this negligence "proximately cause[d]" damages to Everest.  *Marrs v.* Kelly, 95 S.W.3d 856, 860 (Ky. 2003) (quotation omitted).

To establish the standard of care that attorneys owe their clients, Everest offers the testimony of a lawyer named Gary M. Weiss.  *See* Weiss Report (DN 180-2).  Weiss plans to testify that Rambicure breached its duty by failing to advise Everest of the implied covenant of good faith and fair dealing, which in his view every lawyer should know about.  Rambicure moved to exclude Weiss's testimony under Federal Rule of Evidence 702.  DN 180 (citing *Daubert v. Merell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).  Because Everest has not shown Weiss's testimony to be reliable, the Court agrees with Rambicure and excludes Weiss's testimony.

1

* * *

Federal Rule of Evidence 702 governs the admissibility of expert testimony: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" so long as the testimony satisfies four requirements:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Rule requires trial judges to ensure that expert testimony is relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). That is a "flexible" inquiry, *id.* at 594, which affords trial judges "considerable leeway," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The Sixth Circuit has interpreted the *Daubert* line of cases and Rule 702 as interposing a three-part requirement: (1) "the witness must be qualified by knowledge, skill, experience, training, or education;" (2) "the testimony must be relevant, meaning that it will assist the trier of fact;" and (3) "the testimony must be reliable," as measured by the sufficiency of its factual basis and the reliability of its methods. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008) (quotation omitted). The proponent of the expert testimony bears the burden of establishing that the testimony meets those requirements by a preponderance of the evidence. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).

Here the parties dispute every prong of the three-part test.

**1. Qualifications**

An expert can be qualified based on "knowledge, skill, experience, training, or education." FED. R. EVID. 702. But trial courts exercising their gatekeeper function may not blindly accept an assertion that an expert is qualified to testify. Whether a proposed expert's experience qualifies him "to offer an opinion on a particular subject depends on the nature and extent of that experience." *United States v. Cunningham*, 679 F.3d 355, 379 (6th Cir. 2012).

The crux of the parties' disagreement is whether knowledge or experience in equine law is necessary to offer an opinion on the standard of care Rambicure owed Everest. *See* Motion (DN 180-1) at 16–17; Response (DN 181) at 11. Weiss, who is an attorney, admits that he has "been involved in very few cases involving horse

litigation," Weiss Report ¶ 2. He has, however, "been involved in at least 100 legal malpractice cases." *Id.* Everest contends that Weiss is qualified because the standard of care doesn't depend on the subject matter. Response at 11.

A lack of equine-law experience is not disqualifying here. To be sure, the specific actions that Rambicure should have taken may depend on the unique circumstances of the case and the type of legal practice at issue. But that goes to the weight, rather than admissibility, of Weiss's testimony. The Sixth Circuit has explained that "cross-examination" should be used to attack "deficiencies in [an expert's] professional background or credentials." *Cunningham*, 679 F.3d at 379; *see also Antioch Co. Litig. Tr. v. McDermott Will & Emery, LP*, No. 3:09-cv-218, 2016 WL 4480650, at *2 (S.D. Ohio Aug. 25, 2016) (Defense counsel "can certainly cross-examine" a proposed expert "about not participating in a transaction similar to the 2007–2008 sales process and the fact that she has not practiced in 23 years, but these facts do not disqualify her."). And Weiss's extensive involvement with legal-malpractice cases, lengthy legal career, and writings on legal malpractice all support his qualifications to testify. *See* Weiss CV (DN 180-2) at 1–2 (listing publications); Weiss Report ¶ 2.

## 2. Relevance

Rambicure next argues Everest conceded the irrelevance of Weiss's testimony by representing to the Court that it didn't need expert testimony to prove its case. *See* Motion at 17 (citing Everest Trial Brief (DN 164) at 4). Even assuming Weiss's testimony is unnecessary, however, that doesn't necessarily make it irrelevant. The "concession" Rambicure perceives doesn't follow from Everest's prior position, which the Court did not adopt in any event. *See* DN 174 (granting Everest leave to obtain a substitute expert witness, despite Everest's position that an expert wasn't essential).

The proposed testimony is undoubtedly relevant to Everest's case. As the plaintiff, it bears the burden of proving that Rambicure did not exercise the "ordinary care of a reasonably competent attorney acting in the same or similar circumstances." *Marrs*, 95 S.W.3d at 860. Undoubtedly, testimony from an attorney familiar with legal-malpractice cases could be helpful to determining the scope of that duty. *See United States v. Geiger*, 303 F. App'x 327, 331 (6th Cir. 2008) (expert testimony on the "nature of the attorney-client relationship and the ethical duties Geiger's attorneys … may have assisted the jury in evaluating" an element of his defense). Because Weiss could potentially help a jury understand Rambicure's actions in light of the standard of care, his testimony is relevant. *See Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020) (In determining relevancy, "a court should consider the elements that a plaintiff must prove.").

### 3.  Reliability

Weiss's testimony, however, is unreliable and must be excluded because it does not indicate how he reached his opinions.  In assessing reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that [experts] generate."  *Daubert*, 509 U.S. at 595.

The relevant paragraphs from Weiss's report (he wasn't deposed) fail to reveal any standards, principles, or discipline that guided his opinion about Rambicure's performance:

> 8. This advice was clearly substandard and caused a disaster.  The appropriate advice was simply to say "don't do this."  The duty of good faith and fair dealing is mandatory when it comes to contracts, and Rambicure failed to advise Everest that this duty existed and that it created a huge risk.
>
> 10. … It is my professional opinion based upon a reasonable degree of probability that Rambicure violated the duties he owed to Everest because Everest was not entitled to send an agent to the auction and set a reserve, but Rambicure told him he was.  Rambicure had a duty to give Everest accurate advice about an agreement he worked on for Everest, based on what Rambicure knew or should have known was the law. Common sense would tell you as much.
>
> 11. Much was made of the language in the agreement about "commercially reasonable" or "exercise best efforts and with utmost good faith."  That language may have affected Rambicure's advice, because Rambicure may have thought Crestwood had a fiduciary duty to Everest but not vice versa.  But if that affected Rambicure's advice, then the advice was even worse, because Rambicure was wrong about that too. The fact of the matter is that Everest is in this jam because his lawyer gave him very bad advice well below the standard of practice.

Weiss Report at 2–3.

Weiss clearly agrees with Everest that Rambicure's advice was wrong.  But why was it "clearly substandard?"  Weiss never identifies the standard.  And why would advising Everest "don't do this" have sufficed?  Weiss doesn't explain.  An earlier paragraph states that Weiss has "been involved in at least 100 legal malpractice cases."  *Id.* ¶ 2.  But it's unclear how this experience or anything else forms a "reliable foundation" for his conclusions about Rambicure's advice.  *Daubert*, 509 U.S. at 597.  Although his lack of experience in equine law doesn't necessarily disqualify him as an expert, that gap in his resume makes it harder to identify any reliable methods, skill, or experience Weiss brings to bear in reaching or explaining his opinion.

To the contrary, Weiss repeatedly emphasizes that his conclusion is "straightforward" or derived from "common sense" alone. Weiss Report ¶¶ 10, 12. If true, this simply illustrates that his expertise adds nothing to the jury's understanding of the facts of the case. *See Rondigo, LLC v. Casco Twp.*, 537 F. Supp. 2d 891, 898 (E.D. Mich. 2008) ("Perhaps the strongest argument supporting the lack of a rational tie between the expert's [methodology] and the facts, is the inability of the expert to explain the basis for [that choice]."). Weiss's short report points to nothing specific about his "knowledge, skill, experience, training, or education," FED. R. EVID. 702, that connects his expertise to his opinion in this case—the critical link that would entitle him to offer his opinion to the jury as an expert witness. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (That "an idea is based on common sense … means, however, that the district court was well within bounds to conclude that expert testimony on [this subject] … was inadmissible."). Nor does his report engage at all with the text or history of the contract or the various industry practices (reserves, "RNAs," buybacks, and the like) at issue in this dispute. With a nod to "the duty of good faith and fair dealing," his report avoids all engagement with the specific legal problems Rambicure and Everest faced in 2008 and face once again in this lawsuit. Is this really "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"? *Kumho Tire*, 526 U.S. at 152.

Everest responds that "Weiss can and does reliably draw on his education and decades of experience as a practicing lawyer to opine on how the standard of practice or care applies to the facts." Response at 14. Certainly, an expert's opinion may not require "rigorous testing of methodology or peer review," but he must "still provide a methodology that can be proven to be reliable." *Seiber v. Estate of McRae*, No. 1:11–cv–111, 2013 WL 5673601, at*5 (W.D. Ky. Oct. 17, 2013) (quotation omitted). Simply asserting that advice was "substandard" hardly shows how the conclusion was reached or what the standard of care requires. *See EQT Prod. Co. v. Vorys, Sater, Seymour and Pease, LLP*, No. 15-cv146, 2018 WL 1996797, at *20 (E.D. Ky. Apr. 27, 2018) ("Even a generous reading of [the] expert report provides no explanation of the [legal] standard of care… let alone the 'basis and reasons' for such an opinion."); *SAAP Energy v. Bell*, No. 1:12-cv-98, 2020 WL 5044145, at *6 (W.D. Ky. Aug. 26, 2020) ("absence of any case law" in legal-malpractice expert's report "is glaring"). The Court is not required to admit conclusions "only by the *ipse dixit* of the expert" and will exclude Weiss's testimony as unreliable. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 254 (6th Cir. 2001) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## ORDER

The Court grants Rambicure's motion to exclude Weiss's testimony (DN 180).

Benjamin Beaton, District Judge

United States District Court

March 9, 2022