# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**EVEREST STABLES, INC.**                                    **PLAINTIFF**

**v.**                                                                          **No. 3:15-cv-576-BJB**

**WILLIAM C. RAMBICURE, JR., ET AL.**                    **DEFENDANTS**

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Everest Stables sued its lawyer, William Rambicure, and his law firm, the Rambicure Law Group, because Rambicure allegedly gave bad advice regarding Everest's obligations under a contract for Crestwood Farm Bloodstock to sell one of Everest's horses. *See* Second Amended Complaint (DN 87). After the Court excluded Everest's only expert, *see* Daubert Order (DN 184), the Defendants moved for summary judgment: in their view, Kentucky law requires expert testimony (which Everest lacks) to prove the standard of care and proximate causation in a legal malpractice claim. Motion for Summary Judgment (DN 190-1) at 4. And as to the other claims—breach of fiduciary duty, breach of contract, and negligent misrepresentation—Rambicure contends they're subsumed in the malpractice claim and similarly fail. *Id.* at 8.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Because the Defendants are right that Kentucky law requires expert testimony to prove elements of legal malpractice in a case like this, and because Everest forfeited its arguments on the other claims, the Court grants the motion for summary judgment.

### I. This Litigation

Though this case has reached its final turn, it traveled a crowded and sloppy track to get this far.

This dispute began in 2008. It sprung from an agreement between Everest and Crestwood for Crestwood to sell Everest's horses—an auction arrangement described at greater length in several of the other opinions issued by this and other courts. *See, e.g.,* Daubert Order at 1; *see also Everest Stables, Inc. v. Rambicure*, 803 F. App'x 819, 821 (6th Cir. 2020). Eventually, the Sixth Circuit affirmed the district court's conclusion that Everest had breached the implied covenant of good faith and fair

1

dealing by setting a "reserve" on the horse. *See Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 751 F.3d 434, 445–46 (6th Cir. 2014).

Following its loss, Everest filed suit in this Court against Rambicure, his law practice, and the firm he was formerly associated with. Complaint (DN 1). According to the complaint, Everest had sought Rambicure's advice before the auction in question, and Rambicure had approved the plan that got Everest in trouble. ¶ 2. When Everest moved for summary judgment, it disclosed, for the first time, an attorney expert witness named Rachel E. Kosmal McCart. *See* MSJ (DN 77); McCart Report (DN 77-5). Everest lost on summary judgment, DN 120, appealed to the Sixth Circuit, DN 122, and retained new counsel during the appeal, DNs 127, 132 & 135. In fact, Everest sued its previous counsel in the District of Minnesota for legal malpractice for their handling of this second lawsuit and two unrelated matters. *See Everest Stables, Inc. v. Porter, Wright, Morris, & Arthur LLP*, No. 0:21-cv-2289.

Meanwhile, the Sixth Circuit vacated the grant of summary judgment against Everest for its claims of malpractice, negligent misrepresentation, breach of fiduciary duty, and breach of contract. *Everest Stables*, 803 F. App'x at 824. On remand, the Court set pretrial deadlines for a January 2021 trial. DN 141. In November 2020, however, Everest moved to amend the scheduling order because it needed to obtain a substitute expert witness. DN 153. Apparently, McCart had withdrawn from the case with little explanation. *See* January 2021 Scheduling Order (DN 174) at 1–2. But because the Covid-19 pandemic had already delayed the trial, DN 170, the Court allowed Everest a chance to retain a new expert. January 2021 Scheduling Order at 3.

Everest disclosed Gary M. Weiss as its substitute expert, and the Defendants moved to exclude him. DN 180. The Court agreed with the Defendants that Weiss's testimony was unreliable because his expert report revealed no "standards, principles, or discipline that guided his opinion about Rambicure's performance." Daubert Order at 4. Now that Everest had no expert, the Defendants requested the Court reopen summary-judgment deadlines so that it could file a motion regarding the necessity of expert testimony for a legal-malpractice claim under Kentucky law. *See* DN 189. The Court revised the schedule, and the Defendants filed this motion.

## II.   Legal Malpractice

Against that backdrop, Everest attempts to establish legal-malpractice liability without an expert to describe the alleged breach. To prevail on this claim, Everest must show that (1) an "employment relationship" existed between Everest and Rambicure, (2) "the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances;" and (3) this negligence "proximate[ly] cause[d]" damages to Everest. *Marrs v.* Kelly, 95 S.W.3d 856, 860 (Ky. 2003) (quotation omitted). In essence, the plaintiff must make out a negligence case against its lawyer.

Generally, negligence "cases involving professionals or professions requiring special skill and expertise" require expert testimony to help the jury understand "the standard of conduct customary in the profession under the circumstances." *Boland-Maloney Lumber Co., Inc. v. Burnett*, 302 S.W.3d 680, 686 (Ky. Ct. App. 2009). But, as Everest notes, an expert is not necessarily required "where the negligence is so apparent that a layperson with general knowledge would have no difficulty recognizing it." *Stephens v. Denison*, 150 S.W.3d 80, 82 (Ky. Ct. App. 2004). In other words, if "the alleged negligence involves the exercise of complex legal decision-making or the application of complex legal principles," plaintiffs need expert testimony, but they don't need experts to prove "straightforward" negligence cases. *EQT Prod. Co. v. Philips*, 767 F. App'x 626, 632 (6th Cir. 2019) (interpreting Kentucky law). Whether to require expert testimony ultimately rests within the discretion of the trial judge. *Gleason v. Nighswander*, 480 S.W.3d 926, 929 (Ky. Ct. App. 2016).

Examples of straightforward negligence claims not requiring expert testimony include a failure to communicate a plea offer to a client, *Stephens*, 150 S.W.3d at 82, describing the wrong property in a title report, *Crescent Mortg. Co. v. Freeman*, No. 6:20-cv-159, 2022 WL 988356, at *7–8 (E.D. Ky. Mar. 31, 2022), and a conflict of interest, *Greene v. Frost Brown Todd, LLC*, No. 3:14-cv-619, 2016 WL 6877746, at *10–11 (W.D. Ky. Nov. 21, 2016). By contrast, more complex questions for which courts have required expert testimony involve failure "to examine the lessee title for the working interest estate" in providing an opinion on an oil and gas title, *Philips*, 767 F. App'x at 632, trial preparation and strategy, *Gleason*, 480 S.W.3d at 929, where to file suit and whom to sue, *Thomas v. Yost Legal Grp.*, No. 2004-ca-1723, 2005 WL 2174430, at *2, *4 (Ky. Ct. App. Sept. 9, 2005), and whether an attorney adequately explained a settlement offer, *Oram v. Cantley*, No. 2017-ca-1745, 2019 WL 1092662, at *4 (Ky. Ct. App. Mar. 8, 2019).

Guided by these precedents, the question whether Rambicure's advice to Everest interpreting the contract met the standard of care is beyond the "general knowledge" of a layperson. *Stephens*, 150 S.W.3d at 82. How a "reasonably competent attorney" would explain the duty of good faith and its applicability to Everest's contract requires knowledge of implied duties, analysis of the contractual language, and consideration of other circumstances bearing on Everest's contractual duties. *See Crestwood Farm*, 751 F.3d at 445–46 (explaining implied duty of good faith and analyzing contractual language to determine if Everest could set "reserve price" at auction); *Dimitrov v. PBI Bank, Inc.*, No. 2013-ca-2087, 2015 WL 1433545, at *2 (Ky. Ct. App. Mar. 27, 2015) (assessing past dealings and context for parties' statements in determining breach of duty of good faith).

The Rambicure brief explains why the quality of his advice is not subject to the unaided assessment of a lay jury. To formulate his advice, he "had to conduct an interpretation of the subject sales contract, other pertinent legal documents, the potential facts at issue, and Kentucky law … to analyze the contractual parties' legal obligations and potential liabilities." MSJ at 7. Perhaps Everest is correct that

3

"[a]nalysis of the Keeneland auction conditions of sale or of Kentucky statutes is not relevant" to interpret the contract, but this misses the crucial point. Response (DN 191) at 6. Why, *as a legal matter*, were those sources "not relevant"? Which sources *are* legally relevant? What commonsense principle would inform jury members of those answers? None of this is obvious.

These issues are far more complex than questions of deadlines and conflicts that courts have allowed juries to answer without the assistance of expert testimony. *See, e.g., Stephens*, 150 S.W.3d at 82. Such determinations are hardly unique to the practice of law, and therefore more accessible to lay jurors. Assessing the quality of legal advice about a nuanced subject such as the implied contractual duty of good faith, by contrast, necessarily requires the "special skill and expertise" of an attorney. *Boland-Maloney Lumber Co.*, 302 S.W.3d at 686. Indeed, other states' courts facing similar legal-malpractice claims have decided (apparently uniformly) that an expert is necessary to explain why legal advice interpreting a contract may or may not be negligent. *See, e.g., Cammarota v. Guerrera*, 87 A.3d 1134, 1139 (Conn. App. Ct. 2014) (expert testimony required "[i]f resolution of the matter depended on the interpretation of complex contractual language"); *Pearson v. Oxford Property Advisors, LLC*, No. A10-1766, 2011 WL 1833133, at *3 (Minn. Ct. App. May 16, 2011) ("A layman is unlikely to understand the intricacies of an attorney's duties… or interpretation of contracts.").

Everest points to Defendants' description of Weiss's proffered testimony as "cumulative" as supporting Everest's view that the case is relatively simple. Response at 1 (citing Rambicure's Daubert Reply (DN 183) at 5–7). But this assertion responded to Everest's own representation that the case was simple enough for a trial without an expert; it didn't *contradict* Rambicure's point. *See* Rambicure's Daubert Reply at 5–6 (quoting Everest's Trial Brief (DN 164) at 4). The Defendants' reply took Everest's assertion at face value and responded accordingly: that any expert evidence, on Everest's own view, would be unhelpful to the jury. *Id.* at 6–7. This was neither a concession from the Defendants nor an affirmative argument in support of Everest's position.

Lacking such expert proof, Everest's legal malpractice claim fails as a matter of Kentucky law. *See Rogers v. Clay*, No. 2006-ca-397, 2006 WL 3691214, at *3 (Ky. Ct. App. Dec. 15, 2006) (legal malpractice claim not viable without expert testimony). Summary judgment in favor of the Defendants on this claim is therefore appropriate.

### III.   Other Claims

Everest's three other claims all arise from the same operative facts as the malpractice claim. The Second Amended Complaint alleges that Rambicure's advice constituted "false representations," ¶ 73, that its failure to render competent advice violated fiduciary obligations, ¶ 83, and that its failure also violated its contract with Everst for legal services, ¶ 87. Kentucky law "functionally merge[s]" these claims

4

with the malpractice claim when they "rely upon the same operative facts and arguments." *Oram*, 2019 WL 1092662, at *1 n.3. So, Rambicure contends, these claims must also fail if Everest cannot show legal malpractice. Everest forfeited its opposition to this argument by failing to "respond or to otherwise oppose" it. *Kondaur Capital Corp. v. Smith*, 802 F. App'x 938, 946 (6th Cir. 2020) (quoting *Scott v. State of Tenn.*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989)). And Rambicure's analysis of the law and claims is sound. *See Oram*, 2019 WL 1092662, at *1 n.3; *cf. McKenzie v. Berggren*, 99 F. App'x 616, 620–21 (6th Cir. 2004) (under Michigan law, "the only claim that may be brought against one's attorney for inadequate legal services is a claim for legal malpractice"); *Zell v. Kingelhafer*, 751 F. App'x 641, 645 n.1 (6th Cir. 2018) (under Ohio law, breach of fiduciary duty and breach of contract claim are "subsumed by … claim for legal malpractice" where "the claims rise and fall together"). So the Court grants summary judgment to Rambicure on these claims as well.

## ORDER

The Court grants Rambicure's motion for summary judgment (DN 190). The Court denies as moot Rambicure's motions in limine (DNs 154–157) and vacates the final pretrial conference and trial dates in this case.

Benjamin Beaton, District Judge
United States District Court

July 20, 2022